J-A24003-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CRAIG S. HARTMAN | : | |
| | : | |
| Appellant | : | No. 550 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 17, 2023
In the Court of Common Pleas of Bucks County
Criminal Division at No:  CP-09-CR-0001392-2021

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:                          **FILED APRIL 23, 2024**

Craig S. Hartman, Appellant, appeals the judgment of sentence entered by the Court of Common Pleas of Bucks County (trial court).  Following a jury trial, Appellant was found guilty of sex offenses against two minor children. He was sentenced to an aggregate prison term of 23 to 46 years, and designated as a Sexually Violent Predator.  In this appeal, Appellant contends that the trial court erred in admitting photos downloaded from his cellular phone because the warrant for the phone's search was constitutionally overbroad, and the evidence prejudiced him at trial.  He also argues that the trial court abused its discretion by imposing a *de facto* life sentence, and by not properly considering individualized sentencing factors.  Finding that Appellant is entitled to no relief on either claim, we affirm.

The two minor victims in this case were L.H. (age 9) and K.R. (age 10). Appellant met L.H. first through the child's grandmother, Marge Heckman, who was the child's guardian. Heckman worked at a diner where Appellant was a long-time customer, and L.H. would be brought to the diner on occasions when a babysitter could not be found. Appellant often spent time with L.H. during Heckman's shifts. Appellant later met K.R. through L.H., as the two children had become good friends at school.

In the summer of 2020, Appellant took both L.H. and K.R. on a variety of outings, including trips to the mall, the park, and fast-food restaurants. He also bought them clothes, took them to get pedicures, and brought them to the home of his sister, Dawn Borusky, so that the girls could use the swimming pool at the residence.

On July 23, 2020, after K.R. had returned home from Borusky's house, she told her mother that Appellant had put his fingers in her vagina and anus, causing her to bleed later that day. This incident had occurred in Borusky's swimming pool while Appellant played a game with the two girls in which they would hide his wristwatch; Appellant would attempt to find the watch by fondling them under their bathing suits and penetrating the girls digitally.

K.R.'s mother reported what she was told to the police, and K.R. was taken to a nearby hospital to be physically examined.[1] About two weeks later,

---

[1] The physical examination of K.R. and the testing of the clothing she wore that day yielded no evidence of sexual abuse.

the child spoke with a forensic interviewer, Allison Rose, to further recount her experiences with Appellant. K.R. told Rose that, in addition to the incident at the pool, Appellant had taken her and L.H. to his apartment and raped them. The children were instructed by Appellant not to tell anyone about what he had done.

Rose conducted a forensic interview with L.H. a few days later, and the child denied that Appellant had abused her in any way. But at a second interview with Rose about four months after that, L.H. echoed K.R.'s account. L.H. claimed that Appellant had on numerous occasions penetrated her with his fingers.

Detective Stephen Reeves was assigned to the case soon after the children came forward, and on October 22, 2020, he contacted Appellant to ask if he would appear at the police station to answer questions. Appellant agreed, and on that same day he spoke to Detective Reeves for about two hours, gave a statement, and took a polygraph test.

In his recorded interview with Reeves, Appellant denied having had any sexual contact with either L.H. or K.R. He admitted to playing games with the children in his sister's pool, but insisted that it was not sexual in nature. Moreover, Appellant admitted that he would occasionally rub L.H.'s shoulders, arms, feet, and knees. He would also send text messages to L.H. every day, and he stated that he loved her.

Just prior to the polygraph test, Detective Reeves asked Appellant for his cellular phone, and Appellant initially agreed, giving both verbal and written consent. Detective Reeves had possession of the phone for about an hour, during which time he found a file in the phone called "L.H.," containing 196 photos of the child. None of the photos were pornographic or sexually explicit in nature, but a few of them were taken from behind the child, at angles where her buttocks was prominently displayed. In many of the photos, L.H. was wearing a swimsuit.

After Appellant completed the polygraph test, he asked for the return of his phone. Detective Reeves instead kept the phone in his possession while he applied for, and was granted, a warrant to search the device. The officer's affidavit of probable cause enumerated the items to be searched in such a way as to avoid any potential limitations on the material that could be recovered. The "searched for" items included "any and all" documents, files, call history, email activity, photos, videos, images, and identifying information. A search warrant was granted, and it contained an identical description of the items to be searched for. Police relied upon the warrant to download the phone's contents, including all the photos saved in the "L.H." folder.

Charges were filed on May 6, 2021, and Appellant moved to exclude the photos from the evidence at trial. He argued in his omnibus pre-trial motion that the search warrant was invalid because it "did not identify specifically the

information to be seized," and "did not contain the requisite probable cause to conduct the search within the four corners of the written affidavit attached to the search warrant." Appellate did not elaborate on the argument at the hearing on the motion. **See** Suppression Hearing Transcript, 6/30/2022, at p. 24.

The trial court denied Appellant's suppression motion, finding that Appellant consented to the search of the phone, and that regardless, the search was supported by probable cause. **See** Trial Court's Findings of Fact and Conclusions of Law, 7/6/2022, at 4-5; **see also** Trial Court 1925(a) Opinion, 4/21/2023, at 9-11.[2] Accordingly, the Commonwealth was permitted to introduce the photos, and 121 of them were shown to the jury. The Commonwealth relied on the photos in closing to argue that Appellant's possession of them established that he had sexually objectified L.H., rebutting his claim that the relationship was purely platonic. **See** N.T. Trial, 9/15/2022, at 47-48.

---

[2] The trial court indicated in its 1925(a) opinion that Appellant's contention is without merit in part because the photos introduced at trial were retrieved by Detective Reeves during the one-hour window in which Appellant had given consent. **See** Trial Court 1925(a) Opinion, 4/21/2023, at 9. However, Detective Reeves testified at the suppression hearing that no photos were downloaded from the phone until after Appellant withdrew his consent, and a warrant for the phone's search had been granted. **See** Suppression Hearing Transcript, 6/30/2022, at 40. Consistent with that testimony, the Commonwealth now asserts in its brief that the photos of L.H. admitted into evidence were downloaded from Appellant's phone pursuant to the search warrant. **See** Appellee's Brief, at 11.

At the conclusion of the trial, Appellant was found guilty of the following offenses: one count of rape of a child (18 Pa.C.S.A. § 3121(c)); two counts of aggravated indecent assault of a child less than 13 years of age (18 Pa.C.S.A. § 3125(b)); two counts of indecent assault of a child less than 13 years of age (18 Pa.C.S.A. § 3126(a)(7)); two counts of indecent exposure (18 Pa.C.S.A. § 3127(a)); two counts of corruption of minors (18 Pa.C.S.A. § 6301(a)(1)(ii)); and two counts of unlawful contact with a minor (18 Pa.C.S.A. § 6318(a)(1)).

As to each of the two counts of aggravated indecent assault of a child less than 13 years of age, Appellant received consecutive 10-year minimum mandatory sentences, both with an upward range of 20 years. These terms were imposed in accordance with 42 Pa.C.S.A. § 9718(a)(3), which mandates that a person convicted of that offense receive a sentence of not less than 10 years. As to one of the two counts of unlawful contact with a minor, Appellant received a term of three to six years, also to be served consecutively to the other counts. The record reflects that Appellant was not sentenced on the remaining counts, resulting in an aggregate prison term of 23 to 46 years. He was also required to register as a Sexually Violent Predator.

The trial court gave its rationale for the sentence first by discussing the effect of Appellant's crimes on the two minor victims, their families, and the community at large. *See* Sentencing Hearing Transcript, 1/17/2023, at 26. The trial court then recounted the evidence of Appellant's manipulative

behavior, including his friendship with L.H.'s guardian, and frequent activities with both minor victims over an extended period of time. *See id*., at 26-29.

The trial court also responded to the argument made by defense counsel that the sentence sought by the Commonwealth would exceed Appellant's lifespan, as he would not be parole-eligible until the age of 92. While agreeing that Appellant might not live long enough to qualify for parole, the trial court balanced that consideration against the possibility of recidivism even for a parolee of that advanced age. *See id*., at 29-30. As an example, the trial court referred to a 93-year-old repeat sex offender in an unrelated case. *See id*.

Appellant filed a post-sentence motion seeking reconsideration of his sentence, and the motion was denied. He then timely filed a notice of appeal, and in his brief, he raises the following two issues for our consideration:

> 1. Did the trial court err in denying the motion to suppress photographs found on Appellant's phone where the warrant's description of the items to be searched for and seized was unconstitutionally overbroad, an error that was not harmless?
>
> 2. Did the trial court err and manifestly abuse its sentencing discretion when it sentenced a 67 year old with no prior criminal history to a minimum term of 23 years imprisonment as it did not conduct an individualized sentence determination, utilized an unreliable sentencing factor, and imposed what is in effect a sentence of life imprisonment?

Appellant's Brief, at 6.

The Commonwealth responded in its brief that Appellant's overbreadth challenge is waived, that the warrant was not overbroad, and that any defect

concerning the warrant's scope was harmless error. As to Appellant' second issue, the Commonwealth asserted that it is not reviewable here because it involves a discretionary aspect of sentencing which does not pose a "substantial question." The Commonwealth argued in the alternative that the claim lacks substantive merit because the trial court considered all relevant sentencing factors and properly exercised its discretion when imposing a term within the maximum range permitted by the Sentencing Code.

We first consider whether the trial court erred in denying Appellant's motion to suppress the photos of L.H. that were downloaded from his cell phone. On review of an order denying a suppression motion, this Court "is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Yandamuri**, 159 A.3d 503, 516 (Pa. 2017). The trial court's factual findings are binding on this Court if they are supported by the record, but legal conclusions are reviewed *de novo*. **See id**. The scope of our review is limited to "only the suppression hearing record and excludes evidence elicited at trial." **Id**.

At the outset, we find that Appellant's overbreadth challenge is preserved for appellate review. In his motion to suppress, Appellant argued that the warrant for the search of his phone was not drafted with sufficient particularity to pass constitutional muster because it encompassed items for which there was no probable cause.

Recently, in **Commonwealth v. Ani**, 293 A.3d 704, 716 (Pa. Super. 2023), this Court explained that the particularity requirement for a warrant subsumes two distinct types of challenge to a warrant's validity. The first type is a claim that a warrant is not "particular enough," allowing police to rely on an ambiguity of search terms to rummage through a defendant's belongings at will. **See id**. The second type of claim is an "overbreadth" challenge, in which the asserted defect is that the described items to be seized are definite, but so broad in scope that the search encompasses items for which there is no probable cause. **See id**.

Appellant's particularity challenge could have been more precise in his written motion, and he did not elaborate on the nature of his contention at the suppression hearing. However, the argument he made about the defect of the search warrant encompasses the specific issue now raised on appeal, **see Ali**, 293 A.3d at 716, and the trial court considered the overbreadth challenge in its 1925(a) opinion. We likewise find that Appellant's claim is preserved, enabling us to consider its merits.

Under both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, individuals are guaranteed the right to be free from unreasonable searches and seizes. **See Commonwealth v. McMahon**, 280 A.3d 1069, 1071-72 (Pa. Super. 2022) (citing **Commonwealth v. Heidelberg**, 267 A.3d 492, 502 (Pa. Super. 2021)(*en banc*)). Generally, police may not search for or seize evidence

belonging to an individual without first obtaining a warrant supported by probable cause. *See Heidelberg*, 267 A.3d at 502.

Probable cause exists where, "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of crime will be found in a particular place." *Commonwealth v. Young*, 287 A.3d 907, 919 (Pa. Super. 2022) (quoting *Commonwealth v. Green*, 265 A.3d 541, 551 (Pa. 2021)). Search warrants must "describe with particularity the items sought, to establish that 'citizens generally enjoy protection . . . from general, exploratory searches by government actors.'" *Young*, 287 A.3d at 919 (quoting *Commonwealth v. Rega*, 70 A.3d 777, 785 (Pa. 2013)). A warrant is unconstitutionally overbroad where it authorizes a search and seizure of specific material for which there is no probable cause. *See id*., at 920. The "standard for an overbreadth challenge applies equally to the search of a digital space as it does for a physical search." *Green*, 265 A.3d at 553-54.

"[I]n any assessment of the validity of a description contained in a warrant, a court must initially determine for what items probable cause existed." *Commonwealth v. Rivera*, 816 A.2d 282, 290-91 (Pa. Super. 2003). A warrant is valid if there is no "unreasonable discrepancy" between the listed items and the items for which there was probable cause to search. *See id*. "Because the particularity requirement in Article I, Section 8 is more stringent than in the Fourth Amendment, if the warrant is satisfactory under

the Pennsylvania Constitution it will also be satisfactory under the federal Constitution." *Commonwealth v. Orie*, 88 A.3d 983, 1003 (Pa. Super. 2014).

Here, the search warrant for Appellant's cellular phone is plainly overbroad. The items to be searched for and seized were enumerated in the warrant so that the *entirety* of the device's contents were identified. The search was in no way limited to the recovery of evidence of a crime relating to the minor victims. As a result, police were permitted to search and seize material from the phone that had nothing to do with the allegations against Appellant. The search was therefore unconstitutional because it was not limited to items for which police had probable cause of a crime. *See e.g., Commonwealth v. Melvin*, 103 A.3d 1, 18 (Pa. Super. 2014) (warrant for search of email account was overbroad because, despite that there was probable cause that "evidence of criminal activity could be found in emails in the account[,] it did not justify a search of every email therein").[3]

Although the warrant was overbroad, that does not end our inquiry. We must next determine whether the admission of the photos downloaded from Appellant's cell phone caused him prejudice. "An error involving state or

---

[3] It is possible for the defect in an overbroad warrant to be cured by limiting language in supporting documents, such as an affidavit of probable cause. *See Young*, 287 A.3d at 929-31. But here, the documents supporting the warrant do not cure the warrant's overbreadth because they contain identical, and equally overbroad, lists of items to be seized from Appellant's cell phone.

federal constitutional law 'can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless.'" ***Melvin***, 103 A.3d at 20 (quoting ***Commonwealth v. Story***, 383 A.2d 155, 161 (Pa. 1978)). Harmless error may be found where:

> (1) The error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Hutchinson***, 811 A.2d 556, 561 (Pa. 2002) (quoting ***Commonwealth v. Robinson***, 721 A.2d 344, 350 (Pa. 1999)).

In the present case, the admission of the photos was harmless beyond a reasonable doubt for several reasons. First, Detective Reeves had reviewed the photos after receiving Appellant's consent to search his phone, and he would have been permitted to describe the images to the jury even had the photos been ruled to be inadmissible at the trial. ***See e.g., Commonwealth v. Rovinski***, 704 A.2d 1068, 1074 (Pa. Super. 1997) (witnesses permitted to describe photographs they had seen before those photos had been admitted into evidence). The photos' content was therefore partially cumulative of available evidence in the form of the detective's testimony.

Second, Appellant admitted to facts that proved he had an inappropriate relationship with the victims, again making the photos cumulative of other evidence. For example, Appellant did not dispute that he "loved" L.H., that

- 12 -

he frequently sent text messages to the child, that he had taken her to his house without her guardian's permission, and that he had often touched various parts of the child's body. He also could not have disputed the fact that he had numerous photos of L.H. in his phone because he had allowed Detective Reeves to look at them. Thus, the suggestive nature of a fraction of the photos merely corroborated the established fact that Appellant's feelings for the victims were not always platonic.

Third, the photos themselves were not inflammatory, and Appellant's possession of them did not constitute a crime. The vast majority of the photos showed D.H. engaged in normal everyday activities, such as a scaling a climbing wall or entering a swimming pool. Only a few of them were arguably suggestive of an improper motive on Appellant's part – those taken from the behind the child and apparently accentuating her buttocks. And even those questionable photos were subject to interpretation, in that a reasonable person could see them in a completely innocent light. Thus, while the warrant's overbreadth made it defective, this defect had minimal impact under the circumstances, such that the admission of the photos was harmless beyond a reasonable doubt.

Appellant's second (and final) claim in this appeal is that the trial court abused its discretion in sentencing him to an aggregate prison term of 23 to 46 years. He asserts that he received a *de facto* life sentence, as Appellant will not be eligible for parole until he is 92 years old. The specific legal basis

for the challenge is that trial court violated the Sentencing Code by failing to consider individualized sentencing factors, such as his rehabilitative needs and lack of a prior criminal record. Appellant takes particular issue with the trial court's reference to a 93-year-old repeat sex offender, arguing that the trial court made an improper generalization about the likelihood of recidivism from that single instance despite the low probability that an elderly sex offender will recidivate. **See** Appellant's Brief, at 36-37.

"[A] challenge to the discretionary aspects of sentencing is reviewed for an abuse of discretion." **Commonwealth v. Seagraves**, 103 A.3d 839, 842 (Pa. Super. 2014). The right to review of a discretionary aspect of a sentencing is not absolute, and such a challenge "must be considered a petition for permission to appeal[.]" **Commonwealth v. Fiascki**, 886 A.2d 261, 263 (Pa. Super. 2005). In order to invoke this Court's jurisdiction to review such claims, an appellant must satisfy a four-part test:

> (1) whether appellant has filed a timely notice of appeal . . . ; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence . . . ; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Swope**, 123 A.3d 333, 337 (Pa. Super. 2015).

A substantial question for review exists only where an appellant asserts "a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." **Commonwealth**

*v. Bynum-Hamilton*, 135 A.3d 179, 184 (Pa. Super. 2016).  Such a determination "must be evaluated on a case-by-case basis." *Id*.

Here, we find that Appellant has successfully invoked our jurisdiction to review a discretionary aspect of his sentence.  He timely appealed his judgment of sentence, preserved the sentencing issues now before us, and filed a brief that comports with Pa.R.A.P. 2119(f).  Appellant also raised a substantial question regarding whether the trial court properly took his advanced age and rehabilitative needs into account.  *See Commonwealth v. Baker,* 72 A.3d 652, 662 (Pa. Super. 2013) (septuagenarian consecutively sentenced to what may be a life term arguing failure to consider rehabilitative needs raised a substantial question); *Commonwealth v. Coulverson*, 34 A.3d 135, 148 (Pa. Super. 2011) (explaining that a sentence may be excessive where the lower range of a prison term is unlikely to terminate prior to the end of a defendant's life span).  He argues that the trial court failed to comply with the individualized sentencing requirements mandated by section 9721(b) of the Sentencing Code.  We will therefore consider the merit of his claim that the trial court abused its discretion by imposing an excessive sentence.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted).  To establish an abuse of discretion, an appellant must show, by reference to the record, "that the sentencing court ignored or

misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision." *Id*.

In fashioning a sentence, a judge must consider factors such as the rehabilitative needs of the defendant, the need for the protection of the public, and the gravity of the offense. *See Commonwealth v. Peters*, 516 A.2d 1197, 1199 (Pa. Super. 1986). The sentencing judge is in the best position to consider "the nature of the crime, the defendant's character, and the defendant's displays of remorse, defiance, or indifference." *Commonwealth v. Fries*, 523 A.2d 1134, 1135 (Pa. Super. 1987). "[T]here is no requirement that a sentencing court's imposition of sentence must be the minimum possible confinement[.]" *Commonwealth v. Walls*, 926 A.2d 957, 965 (Pa. 2007). A trial court instead has discretion to run sentences concurrently or consecutively to other sentences being imposed. *Commonwealth v. Mouzon*, 828 A.2d 1126, 1130-1131 (Pa. Super. 2003).

At the sentencing in the case at hand, the trial court considered all mandatory sentencing factors when imposing a prison term that as well within the statutory maximum. In fact, the lion's share of the aggregate sentence – two consecutive 10-year terms – results from minimum terms that were statutorily mandated and not a matter of judicial discretion.

Additionally, the trial court adhered to individualized sentencing requirements by stating on the record the reasons for the length of the sentence. The trial court explicitly considered the nature of Appellant's

offenses, his personal history, the protection of the public, the impact on the community, and Appellant's rehabilitative needs.

Appellant argues that the trial court failed to consider his age and improperly referred to another instance of an elderly sex offender who reoffended on parole. In context, however, the trial court's reference was not an abuse of discretion or otherwise a departure from the requirements of an individualized sentencing.

Defense counsel had argued at the sentencing hearing that the 23-year minimum term was too long because Appellant would not survive to become parole eligible at the age of 92. The trial court gave credence to that possibility, but noted briefly that a parolee of that age may still commit a sexual offense and pose a risk to the public. The trial court was not applying an unfounded generalization about elderly offenders to Appellant. Rather, the trial court was accurately stating that it could not presume that Appellant would pose no risk to the public if he lived long enough to be eligible for parole. Thus, we conclude that Appellant's challenge to the discretionary aspects of his sentence has no merit and that the judgment of sentence must be upheld.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/23/2024</u>